# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

ESTATE OF JOSEPH MURPHY,
        Plaintiff,
    vs.
STATE OF ALASKA, DEPARTMENT OF CORRECTIONS, *et al.*,
        Defendants.

1:17-CV-00010 JWS

ORDER AND OPINION

[Re: Motion at docket 53]

## I. MOTION PRESENTED

At docket 53 plaintiff Estate of Joseph Murphy ("Plaintiff") asks the court to conduct an *in camera* review of certain personnel and disciplinary records of defendant Jill Robinson ("Robinson"). Robinson responded at docket 68. Plaintiff replies at docket 74. Oral argument was not requested and would not be of assistance to the court.

## II. BACKGROUND

Joseph Murphy ("Murphy") was sent to the Lemon Creek Correctional Center ("Lemon Creek") from Bartlett Regional Hospital on August 13, 2015, to be temporarily detained for alcohol detoxification and suicide monitoring pursuant to AS 47.37.170. Early the next morning he complained to Robinson, a nurse at Lemon Creek, of chest pains and requested his medication. Plaintiff alleges that Robinson did not obtain Murphy's medication and did not follow-up or monitor his condition. Plaintiff alleges that Murphy made two subsequent requests for medication to other Lemon Creek staff members but his requests went unheeded. According to Plaintiff, a Lemon Creek video shows Murphy collapsing in his cell twenty-six minutes after he first requested his

medications from Robinson. He was declared dead about an hour later, after resuscitation efforts failed.

### III. DISCUSSION

As part of Plaintiff's 42 U.S.C. § 1983 claim against Robinson, Plaintiff served various requests for production, including the following:

1) RFP No.1 – production of Robinson's state employee personnel file;

2) RFP No. 4 – production of any written or recorded statements or communications regarding Joseph Murphy, the death of Joseph Murphy, investigations into the death of Joseph Murphy, or the Department of Corrections's November 13, 2015 Administrative Review by Dean Williams and Joe Hanlon;

3) RFP No. 7 – production of any writing received or sent by Robinson in which she discusses Joseph Murphy and/or her care and treatment of him.

Robinson objected to the three requests based on her right to privacy under AS 39.25.080 and Article I § 22 of the Alaska Constitution and based on medical peer review privilege. After the court's issuance of an order at docket 48 regarding the applicability of AS 39.25.080 to Defendant Corcoran's personnel file, Robinson narrowed the basis of her objection to medical peer review privilege, set forth at AS 18.23.030.

The medical peer review privilege statute protects the proceedings of and records generated by a medical peer review organization and protects the investigative process used by the organization.[1] The statute states as follows:

> (a) Except as provided in (b) of this section, all data and information acquired by a review organization in the exercise of its duties and functions shall be held in confidence and may not be disclosed to anyone except to the extent necessary to carry out the purposes of the review organization and is not subject to subpoena or discovery. Except as provided in (b) of this section, a

---

[1] *See Mat-Su Valley Med. Ctr., LLC v. Bolinder*, 427 P.3d 754, 763-64 (Alaska 2018).

-2-

person described in AS 18.23.020 may not disclose what transpired at a meeting of a review organization except to the extent necessary to carry out the purposes of a review organization, and the proceedings and records of a review organization are not subject to discovery or introduction into evidence in a civil action against a health care provider arising out of the matter that I the subject of consideration by the review organization. Information, documents, or records otherwise available from original sources are not immune from discovery or use in a civil action merely because they were presented during proceedings of a review organization, nor may a person who testified before a review organization or who is a member of it be prevented from testifying as to matters within the person's knowledge, but a witness may not be asked about the witness's testimony before a review organization or opinions formed by the witness as a result of its hearings, except as provided in (b) of this section.[2]

Disclosure of information and details deemed confidential under the statute constitutes a misdemeanor.[3] The parties agree that the Department of Corrections' peer review committee qualifies as a "review organization" for purposes of the statute.[4]

In her response to Plaintiff's motion, Robinson drops her objection to turning over her personnel file for an *in camera* view after confirming that her file does not contain any peer review committee materials. She agrees to produce her personnel file for *in camera* review "according to the procedure . . . followed by this Court in regards to Defendant Corcoran's personnel records."[5]

She maintains her objection to Plaintiff's RFP No. 4 and RFP No. 7, arguing the medical peer review privilege statute prevents her from fully complying with these two requests, which ask for statements, communications, or writings related to Joseph Murphy, his care, his death, and investigations into his death. She asserts that "[a]ll non-privileged materials responsive to Plaintiff's discovery requests Nos. 4 and 7 that are in Ms. Robinson's care, custody or control, including Mr. Murphy's medical records

---

[2]AS 18.23.030(a).

[3]AS 18.23.040.

[4]The term "review organization" is defined in AS 18.23.070.

[5]Doc. 68 at p. 4.

-3-

and Ms. Robinson's incident report, have been disclosed by Ms. Robinson,"[6] but she argues that she cannot turn over other unspecified materials because of the peer review privilege statute.

Much of Robinson's briefing is devoted to arguing that Alaska's peer review privilege is applicable in this federal case. She argues that because Alaska criminalizes a violation of the privilege, the issue presented here is different from *Agster v. Maricopa County*,[7] where the Ninth Circuit emphasized that federal common law preempts state law on questions of privilege and declined to create a federal common law privilege for materials related to a peer review conducted by a correctional facility. Even assuming *Agster* is distinguishable and the state statute applies to this case, Robinson has not met her burden to show that her objection to producing the requested materials on the basis of peer review privilege is proper.[8]

Despite the protections afforded a medical peer review committee and evidence acquired by a committee, a litigant may nonetheless seek "[i]nformation, documents, or records otherwise available from original sources" or information on matters within an individual's "person[al] knowledge."[9] However, as the Alaska Supreme Court recently clarified, the litigant must seek such outside evidence from another source and not the committee or a committee member.[10] That is, the committee and its members cannot be forced to turn over evidence in its possession even if the evidence originated outside of the review process; the litigant must instead obtain the evidence elsewhere. Here, Plaintiff is not asking the review committee or any of its members for evidence obtained

---

[6] Doc. 68 at pp. 9-10.

[7] 422 F.3d 836 (9th Cir. 2005).

[8] Indeed, in its reply brief Plaintiff withdraws the preemption argument from the motion and asserts that it need not be decided at this time.

[9] AS 18.23.030(a).

[10] *Mat-Su Valley Medical Center, LLC v. Bolinder,* 427 P.3d 754 (Alaska 2018).

for or used in its proceedings, nor is Plaintiff asking Robinson to obtain anything from the committee. Rather, Plaintiff is asking Robinson for any relevant communications that are in her possession, custody, and control.

Robinson has not provided any information about the nature of specific materials in her possession which she believes are protected under the statute, and therefore the court cannot craft any specific directive. Instead, the court can only stress that under the statute "[i]nformation, documents, or records otherwise available from original sources are not immune from discovery or use in a civil action merely because they were presented during proceedings of a review organization."[11] Indeed, cases construing similar state statutes explain that information "available from a source other than the committee does not become privileged simply by being acquired by the review committee."[12] Here, the review committee's evidence generally consisted of documents, videos, and interviews.[13] In RFP No. 4 and No. 7 Plaintiff is not asking for videos or information about what Robinson said in her interview; he asks only for written communications. The fact that Robinson may have provided existing communications in her possession to the committee as part of its review does not make them privileged. Robinson has not indicated she has in her possession written testimony or statements she or others prepared specifically for the committee.

The statute also prevents disclosure of information about what transpired at a committee meeting or disclosure of committee records and findings. Given that disclosure of confidential information is a misdemeanor, it is unlikely that Robinson has in her possession, custody, or control any materials about the committee meetings or any committee records generated as a result of the review process. Indeed, the

---

[11] AS 18.23.030(a).

[12] *McGee v. Bruce Hosp. Sys.*, 439 S.E.2d 257, 260 (S.C. 1993), *quoted in Mat-Su Valley Med. Cent.*, 427 P.3d at 767.

[13] Doc. 69 at p. 2, ¶ 2.

-5-

affidavit from the Deputy Director of Health and Rehabilitation Services for the Department of Corrections at the time of the peer review states that "[a]ll documents related to the event were stored in the DOC executive Office."[14] There is nothing to suggest that Robinson has or had any access to these stored materials.

### IV. CONCLUSION

For the reasons above, the motion at docket 53 is granted as follows: (1) The court will conduct an *in camera* review of Robinson's personnel file on the same conditions and terms set out in its order at docket 48 addressing Defendant Corcoran's personnel records. (2) Robinson is directed to produce any materials in her possession, custody, or control that are responsive to RFP No. 4 and RFP No. 7 in accordance with the guidance provided herein. In the event Robinson has communications in her custody that she believes are responsive to Plaintiff's requests but subject to the privilege, she is directed to provide general details about the nature of the communication—what type of communication it is; when it was generated; to whom the communication or statement was provided and when—to Plaintiff and confer with Plaintiff regarding the withheld material. If the parties are unable to reach an agreement on any withheld item, Plaintiff may file a subsequent motion seeking the court's guidance.

Robinson shall deliver the materials for *in camera* review within 14 days. Materials provided on a disk must be accompanied by a paper index describing each item in the manner used by defendant Corcoran.

DATED this 19th day of December 2018.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[14]Doc. 69 at p. 2, ¶ 6.