# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

ESTATE OF JOSEPH MURPHY,
    Plaintiff,
vs.
STATE OF ALASKA, DEPARTMENT OF CORRECTIONS, *et al.*,
    Defendants.

1:17-CV-00010 JWS

ORDER AND OPINION

[Re: Motion at docket 100]

## I. MOTION PRESENTED

At docket 100 plaintiff Estate of Joseph Murphy (the "Estate") and Defendants State of Alaska, Department of Corrections ("DOC"), Michael Schramm (Schramm), and Robert Corcoran (Corcoran; collectively "the State") jointly request court approval of their settlement and for an order permitting immediate disbursement of the settlement proceeds. Defendant Jill Robinson ("Robinson"), who was not a party to the settlement, opposes the motion at docket 117. The Estate replies at docket 120, and the State replies separately at docket 121. Oral argument was requested but would not be of assistance to the court.

## II. BACKGROUND

Joseph Murphy ("Murphy") was sent to the Lemon Creek Correctional Center ("Lemon Creek") from Bartlett Regional Hospital on August 13, 2015, to be temporarily detained for alcohol detoxification and suicide monitoring pursuant to AS 47.37.170. Early the next morning he complained to Robinson, a nurse at Lemon Creek, of chest pains and requested his medication. Plaintiff alleges that Robinson did not obtain

-1-

Case 1:17-cv-00010-JWS   Document 145   Filed 06/22/20   Page 1 of 7

Murphy's medication and did not follow-up or monitor his condition. Plaintiff alleges that Murphy made two subsequent requests for medication to other Lemon Creek staff members but his requests went unheeded. According to Plaintiff, a Lemon Creek video shows Murphy collapsing in his cell twenty-six minutes after he first requested his medications from Robinson. He was declared dead about an hour later, after resuscitation efforts failed.

The Estate filed suit, alleging various state law medical negligence claims and negligent training and supervision claims against the DOC. It brought § 1983 claims against Robinson, Schramm, and Corcoran individually, asserting they each violated Murphy's Fourteenth Amendment Rights to Due Process by acting with deliberate indifference to his medical needs.

On January 17, 2020, the Estate and the State successfully mediated and settled all of the Estate's claims against the DOC, Schramm, and Corcoran—Counts 1-5 and Counts 7-8—for and in consideration of the total sum of $550,000 to be paid by the State to the Estate. This leaves only the § 1983 claim against Robinson, in Count 6, for trial. The State argues that it has no further duty of indemnification as to the claim against Robinson, because the Estate has conceded that this claim requires it to prove deliberate indifference, which is more than common law negligence and along the lines of reckless disregard. The State and Estate request that the court approve their settlement and order immediate distribution of the proceeds.

Robinson opposes the request. She argues that the settlement inappropriately resolved claims on her behalf without her consent and that the State of Alaska violated certain duties owed to her under her employment contract. She also asserts that there are unresolved claims and compensation issues between the parties to this action which preclude settlement. She opposes any immediate disbursement of funds, arguing that disbursement runs counter to the state probate court's order.

### III. DISCUSSION

**Settlement approval**

Robinson asserts that the settlement should not be approved because the State did not have her consent to settle. As noted above, the State settled the claims against the DOC, which include the claims for medical recklessness and negligence in Counts 1 and 3. She contends that Counts 1 and 3 against the DOC actually constitute claims against her because they are founded upon allegations of her conduct during her interaction with Murphy. A plain reading of the complaint, however, shows that these two claims were not, in fact, brought against Robinson. The named defendant for each of these counts is "State of Alaska, Department of Corrections." It is the DOC that is alleged to have breached a duty of care owed to Murphy. The allegations asserted therein of course refer to Robinson's actions—the DOC cannot act or fail to act in and of itself but rather can only operate through its employees. However, the reference to Robinson and her conduct does not make the claims individual ones against Robinson. Rather, they are standard employer vicarious liability claims brought solely against the DOC.

The settlement releases the State of Alaska from "any and all" actions or claims arising out of the death of Murphy. The parties understand this to include any common law negligence claim that the Estate may have or will have against Robinson that could trigger indemnification obligations under Robinson's employment contract. To fully effectuate the release, the Estate conceded that Count 6, the § 1983 "deliberate indifference" claim brought individually against Robinson, is not tantamount to a common law negligence claim under the applicable legal precedent and therefore does not trigger indemnity obligations under the employment contract.[1] This agreement does not equate to an unauthorized settling of a medical malpractice claim against Robinson

---

[1] Doc. 101-1 at pp. 2-3.

that must be reported under 42 U.S.C. § 11131(a).² It simply affirms the understanding between the State and the Estate that there was never any medical negligence claim brought against Robinson and that there never will be. To be clear, the State believes that Robinson did not act outside the scope of her employment with deliberate indifference and stresses that the settlement does state otherwise.

Robinson also asserts that the State cannot settle and leave her to defend the remaining § 1983 action without her co-defendants. The Estate and State however adequately persuade the court that there is no joint defense obligation or ethics violation preventing the settlement. Assistant Attorney General ("AAG") Ali Moser Rahoi and AAG Aisha Tinker Bray, as well as their AAG predecessors in this case, never represented Robinson. They entered appearances on behalf of the DOC, Schramm, and Corcoran. Robinson had separate, independent counsel assigned to her from the Special Litigation Section within the Civil Division of the Alaska Attorney General's Office. Robinson also retained private counsel to represent her, who has since assumed the role of lead counsel. The state AAG from the Special Litigation Section still represents her as co-counsel.³ Nothing in the record or applicable rules suggests that there is any conflict with this arrangement or that professional rules of conduct have been violated in relation to her representation or the settlement.⁴

Robinson also argues that remaining indemnification issues prevent the Estate's settlement. The argument is without merit. The indemnity provision of the applicable collective bargaining agreement limits coverage to certain types of claims, namely those for common law negligence occurring within the scope of employment. It states that the State of Alaska "will indemnify [Robinson] for a judgment or legal obligation if the judgment or legal obligation arose from [her] action within the scope of [her] office or

---

²*See* 42 U.S.C. § 11151(7) (defining the term "medical malpractice action or claim").

³Doc. 118-2.

⁴*See* doc. 120 at pp. 9-10; doc. 121 at pp. 4-5.

-4-

employment[.]"⁵ By definition, an employee can only act within the "scope of office or employment" when his or her conduct does not "constitute willful, reckless, or intentional misconduct, gross negligence, or malicious conduct."⁶ The Estate's § 1983 claim against Robinson falls outside the indemnity provision because it avers that she was deliberately indifferent, which, under the applicable case law, requires a plaintiff to "prove more than negligence but less than subjective intent—something akin to reckless disregard."⁷ The Estate has acknowledged its heightened burden and conceded any argument to the contrary by explicitly releasing any potential claim it may have for common law negligence. The Estate is able to define its case as it wishes and has done so in a manner that makes it absolutely clear that its only remaining claim is the § 1983 deliberate indifference claim against Robinson. In any event, as noted by the State, if a judgment is entered against Robinson that she believes is covered by the indemnity provision, she may assert her claim at that time. "Nothing in DOC's settlement deprives [her] of her rights. The risk of judgment against Robinson for a covered claim requiring indemnification is entirely the State of Alaska's risk."⁸

Robinson also contends that settlement is not proper because she has claims against the State. To the extent those claims are based on its failure to defend her adequately, there is no merit to such claims. Robinson has state-provided co-counsel in this case. The fact that she has retained private counsel to take the lead in her defense does not diminish the state provided one. It is not clear what additional claims she has against DOC or its attorneys, but any such claims are distinct from the settlement of the Estate's claims against the DOC, Schramm, and Corcoran. Robinson "cannot be

---

⁵Doc. 101-2 at p. 28.

⁶Doc. 101-2 at pp. 28-29.

⁷*Gordon v. Cnty of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

⁸Doc. 121 at p. 10.

permitted to prohibit settlement of co-defendants by threatening spurious litigation against their counsel."[9]

**Immediate disbursement**

Robinson argues that the request for immediate disbursement of the settlement funds should be denied because it violates the probate court order that "all distributions" from the Estate should be put on hold until "the resolution of [this federal lawsuit] or until such time as the court can make a full determination of all costs and expenses as may be owed to [Robinson]."[10] For the reasons set forth in the Estate's briefing, the court concludes that immediate disbursement is warranted. The court is not restricted by the jurisdiction of the probate court to enter an order on the question of disbursement of settlement funds. Furthermore, there is no remaining dispute as to fees. The settlement resolves all claims against the DOC, Schramm, and Corcoran, as well as any issues of fees. The settlement does not resolve any claims against Robinson and thus she cannot be deemed a prevailing party for purposes of claiming attorneys' fees from the proceeds. The sole claim remaining is a § 1983 claim, and Robinson can only recover attorneys' fees on that claim in the "exceptional circumstance" where the court finds that the claim, at the time of filing, was "frivolous, unreasonable, or without foundation."[11] The court concludes that it was not. Therefore, Robinson has no potential claim to the settlement funds now owed to the Estate.

## IV. CONCLUSION

Based on the preceding discussion, the joint motion for approval of the settlement between the Estate and Defendants DOC, Schramm, and Corcoran is hereby GRANTED; all claims between these parties are dismissed in their entirety with

---

[9] Doc. 121 at p. 10.

[10] Doc. 119-1.

[11] *Harris v. Maricopa Cnty. Superior Court*, 631 F.3d 963, 986-69, 976 (9th Cir. 2011); *see also Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1187 (9th Cir. 2012).

-6-

| | |
|---|---|
| 1 | prejudice.  The Estate's further request for the immediate disbursement of settlement |
| 2 | proceeds is GRANTED. |
| 3 | DATED this 22nd day of June 2020. |

/s/ JOHN W. SEDWICK
SENIOR JUDGE. UNITED STATES DISTRICT COURT